vs. Dominick Pagano. Arguments to seek 15 minutes per side in support of the appellant. Good morning. Good morning. May it please the court, my name is Kent Carter. I'm here for the appellant, CNH Capital America LLC. I would like to reserve 5 minutes for rebuttal if I may. You may, and you may proceed. Thank you. At its core, the case before this court is a conversion action. The defendant of appellee Dominick Pagano was unquestionably the lone architect and beneficiary of this conversion. The facts are obvious and the district court committed reversible error in entering summary judgment in his favor. Very, very succinctly the facts are, on its final days in business, Hunt Tractor completed its largest sale ever, $825,000. Instead of remitting those proceeds to its floor plan lender, CNH, Mr. Pagano seized the opportunity to use those proceeds to pay unmatured loans to their bank. Loans which not coincidentally were the only loans that Mr. Pagano had guaranteed and were the personal liquid assets to secure. Mr. Pagano committed this conversion for his own benefit. There are three independent grounds for conversion liability here, all of which are well grounded in law. First, Mr. Pagano directed the conversion. Second of all, he effectively received the proceeds due to CNH through repayment of his debts. And third, he received the traceable proceeds of the conversion by obtaining return of his pledged stock. In order, first Mr. Pagano was liable for his own actions. He is liable for the conversion he directed. The district court concluded that Mr. Pagano had directed the conversion and benefited from the conversion, but he was insulated from liability because he directed the conversion on behalf of the corporation Hunt Tractor. That statement is an error of law. The law in Kentucky is very clear that if a shareholder of a corporation converts proceeds, even on behalf of his corporation, the individual is still liable. But doesn't there have to be some wrongfulness in there? I mean, if you had a major shareholder of a company and he caused the company to engage with him, I mean, that might be exercising control, but if the company had the power to do that and it was within their rights to do it, it wouldn't be a conversion, would it? There is an element of intent contained in conversion. However, an officer can unwittingly commit conversion if you take possession or control of collateral due to another and directed to another. If your acts are knowing, then liability follows. I guess I'm asking whether the company has to be doing something that it shouldn't be doing in order for this to be conversion. Yes, but the company did something that it shouldn't be doing. There's got to be some wrongfulness in the company's giving the money to the one bank rather than the other, right? Yes, indeed. And there was in this instance. What was that? Okay. C&H Collateral had a purchase money security interest in all of the collateral that was on the floor of Hunt Tractor. It was a case dealership. C&H Capital provided the floor plan, the wholesale financing for that dealership. When anything was sold, any collateral was sold, such as the 12 backhoes that are ultimately at issue in this case, the funds received by the dealership were immediately due to C&H Capital towards application to the floor plan line of credit. Instead of remitting those proceeds to C&H Capital as contractually and legally required. Was there a contractual obligation to pay that within a certain amount of time? Is that what it is? It did. That was actually a government payment. It was to the Kentucky Department of Transportation and those funds were immediately due to C&H Capital upon receipt by Hunt Tractor. And instead of remitting those, Mr. Pagano used the opportunity to remit them to Commonwealth Bank, which did not have any right to those proceeds. It had a loan, no doubt, to Commonwealth Bank, but it didn't have the right to all of this collateral proceeds. The money that he allegedly converted was then the property of C&H or it was just owed to C&H? It was owed to C&H. And you can commit a conversion of something that's just owed to somebody else? C&H had the right to possession of the collateral. Conversion is not necessarily premised only on ownership. So if someone were to steal a leased car, for instance, the lessee of the vehicle could still sue for conversion because they have a right to possession. And for that reason... What is the evidence that shows that Mr. Pagano actually directed the money be paid to the bank as opposed to C&H? He left an email paper trail directing Commonwealth Bank. On the day that the money was received, Mr. Pagano started immediately contacting Commonwealth Bank, directing that the funds be used to pay off the line of credit and the term loan due in 2018 and to close it. Understand, Hunt Tractor had never received this large of a payment in its life. Mr. Pagano knew that it came in and immediately contacted the bank telling them to use all of the money to pay off the loans. As I recall, he claims that he was unaware that some of these payments were being made and that the Hunt Tractor, he thought, was receiving some receivables and the money was somehow getting paid. So I guess what you're arguing is that there's a genuine dispute as to facts in terms of his involvement in the directing the payment of that loan. At best, there is a fact question for Mr. Pagano. But there can be no question that in addition to directing the conversion, he received the benefit of that conversion. The proceeds were paid to Commonwealth Bank, but they were effectively transferred to Mr. Pagano's own use and benefit. That is a second grounds for imposing conversion liability here. We cite to an Eastern District of Virginia case, Federal Insurance Company v. Smith, where a husband used insurance proceeds due to a lender in order to pay off the mortgage of he and his wife. The court imposed conversion liability on the wife, notwithstanding the fact that she never touched the money. The court stated that if the money was used to satisfy her joint obligations, then she received the benefit of that and is liable for conversion. It said they were effectively transferred to the defendant's possession through the agency by which the defendant chose to receive the funds. Here, Mr. Pagano directed that the funds be sent to Commonwealth Bank for his own use and benefit. That also supports conversion liability. Tell me how this squares with your fraudulent conveyance claim. Because as I recall, the question is whether there is third party liability under Kentucky law. We believe the facts support both conversion and fraudulent conveyance independently. As to fraudulent conveyance, the district court held that only Commonwealth could be a defendant to this action because it was the immediate transferee of the funds. The Kentucky fraudulent conveyance acts void gifts or transfers or conveyances, in addition, made without consideration or with the intent to defraud a creditor. The court focused exclusively on the term transfer, transferee, who received the money. And while Commonwealth was the payee, there is no doubt that Mr. Pagano received the gift, which is absolutely precluded by the statute. So the Kentucky fraudulent conveyance act voids gifts made with the intent to avoid a creditor. Here, Mr. Pagano absolutely received a gift. The sum total of this transaction was funds were received by a contractor. They were then paid to Commonwealth so that Mr. Pagano could obtain the release of his stock. That is a gift. It's no different than someone going to a jewelry store and buying a ring for his wife. The jewelry store is the payee, but the wife gets the gift. The Kentucky fraudulent conveyance act absolutely voids gifts. Can I ask you a question about the scope of relief? Under any of your theories, you wouldn't be getting more than the value of the payment by the state, is that correct? The payment by the state was $825,000. Not asking for more than $825,000. We're asking for $877,000, and the reason for that is that there was additional collateral sold by a contractor in that same week. You're not trying to make Pagano liable for all the debts of Hunt? The alter ego claim would arguably impose damages on Mr. Pagano for the in full. We have asked for that, yes. Doesn't the fact that you're asking for that sort of undermine the theory? Because it's for alter ego? For all the debts of Hunt Tractor. Beyond this conversion or fraudulent conveyance, taking the money that came from the state or whatever. The conversion and the fraudulent conveyance actions seek only imposition of liability for the amount transferred in satisfaction, $877,000. May I wrap up very quickly? Sure. The conversion and fraudulent transfer action seek only imposition of damages of roughly $877,000, and that is the amount of the C&H proceeds that were applied to pay off in full those Commonwealth loans. The alter ego would impose liability on Mr. Pagano for the debts of Hunt Tractor. Which could be more than twice that much. It could be, yes. If he is the alter ego of the corporation. Much more wide-ranging liability that you're seeking under this idea of piercing the veil. Yes. Okay. Thank you, Mr. Carter. You'll have your rebuttal. May it please the court, counsel. We ask ourselves when this lawsuit was filed, why would a simple fraudulent transfer case become so complicated? Why would you have all these alternative theories of damages? And why would you not sue the transferee? And the answer has become apparent. Because the transferee, the bank, had as much right to this money and more than did C&H. The law is clear in Kentucky and most places that a bank has a possessory interest in funds that are pledged, that are there and they're pledged. The bank has a superior interest to any other claims. And there are cases reported on that ad nauseum. That's after they get the money though, right? They have to get the money. The money, this transaction, up until the loans were repaid, was no different from any other transaction in 95 years. You're saying if a bank is owed money by somebody, that that person can pay the bank what he owes somebody else. Well, he owes two. I'm asking a hypothetical. Hypothetically, he could... What he owes somebody else, he can give it to the bank and then that immunizes him from fraudulent transfer kind of liability. We may or may not ever know that because the fraudulent transfer provision can't be enforced because the transferee is not a party. And the fraudulent transfer is simply unwinding the deal. That's the remedy. Put everybody back to where they were. And you can't put them back to where they were unless you have the transferee. And I think, I'm not sure that that answers your question, Justice Rogers, but I think that once you deposit the money into the bank, then the bank has as much right to it as C&H or more. And it's a business decision what bills are going to be paid. Because it's a depository bank and it's because of the priority we give to depositors. The bank had a security interest, a recorded security interest, in the funds in the bank as well as the inventory, anything. They had a superior interest in the inventory and they had an interest in the proceeds. But when the money went to the bank, the bank had an interest in the money. And the bank's interest in the money was superior to that of C&H. That's black letter law. That's in Kentucky. And that is why they realized, and the courts gave them months to bring in additional parties. And we kept holding our breath thinking they're going to bring in the bank, they're going to bring in the bank. But they never did. They were smarter than we were. The reason they didn't bring in the bank is that they knew the bank had a superior interest in the money. So they couldn't unwind it. They couldn't force the bank to give the money back and then the bank, then they would get the money and then the bank would go after Pagano. They knew that that wasn't going to work. They were, they just outsmarted us. But they didn't have a remedy because you have a company that has more debt than it has assets. And so it paid off a debt. And because Pagano got a benefit for it, they're thinking he is the transferee, he owes some kind of a duty to C&H, he's done something horribly wrong. And all that happened here was the bank got paid. What if there was a priority? Do you challenge that there was a priority, that C&H had a priority, should have gotten the money first before, you challenge that, right? Oh, absolutely. That's a You're shaking your head this way Oh, I'm sorry. I don't mean to shake my head that way. So what's the answer? My head is involuntary. Yeah, yeah. I know. Sometimes it's telling, you know, when people say yes and no, you know, I mean, I get confused. I'm intimidated. You get a Richard Sullivan bobblehead. I'm intimidated. We have body language experts on the bench. That is scary. But the question is, do I question the priority? And the answer is, yeah, the UCC sets the priority. You do question the priority. Yes. What if you didn't question the priority? What is there, hypothetically speaking, what if there is a priority? What then is If there's a priority Would you present that just by putting the money in a bank? No. No. I think if there was no priority, then you have to, you unwind the, if it's a fraudulent transfer and there is, and given your hypothetical, then you sue the transferor and the transferee. The money comes You have to sue the bank and the bank can't be sued. The only, only the bank can be sued. It has to be sued. All right. It has to be sued because it's the transferee. The remedy is to put people back where they were. Unwind the transaction. What do you do about his ring example? About what? The ring example that he has in his brief. About buying a diamond? We didn't get the ring. We didn't get a ring. All they got was return of his stock that he owned. He didn't get the ring. He didn't get the money. I mean, if I got a car by fraudulent transfer and gave Kent a ride in it, is he a transferee if he knew that that car came to me improperly and I drive him around town here to the bars? Does he get to say, does the rightful owner get to sue him and get money from him because he took a ride in my car? If you pay off the debts of somebody and that somebody is closely related to you, like your spouse or an alter ego of yourself or your kids, you pay off that debt with money that you owe somebody else, that's a... That's not the case here. You have to, I understand, then you have to sue the person you pay off, the person who gets fraudulently conveyed or has fraud imposed on them, has to sue that person who received the payoff on the debt, is that the argument? You have to sue the transferor and the transferee. So you're saying, yes, you have to sue the person who... Yes. So you have to sue the diamond dealer in this example. Is he the transferor? If he had something to do with it... I'm talking about the transferor. You're saying the diamond dealer is the transferee because he got the money. Right. Right. Whoever transfers the money or the... If the transferor is a person who, yes, the diamond goes back and the money goes back, I think that answers the question. It does, but it seems counterintuitive. Well... I think all they did was sell it for its value. Why should they be involved? The person who has the diamond or who has the proceeds, whatever it is... Well, the Kentucky legislature... It seems like it ought to be sued. What is the logic of saying that this... You could have had it go through 12 steps and it ends up right here. You have to sue all those people. That's what the law says. I didn't write it. And I've had it... Does the law make sense or is the law sort of silly? Oh, I think the law makes great sense. What is the sense of having to sue all those interim people who just transferred it for value? Because you're trying to put... You can't put people back in the position they started with. Well, all those people in the middle, it doesn't matter whether their position has changed. So-and-so gives it to so-and-so who gives it to so-and-so who gives it to you or gives it to your spouse or your kid, it seems like they ought to be able to take it away from the spouse or the kid without making every one of those interim transactions undone. But you say that makes sense to do it that way. What's the sense? I'm trying to see why Kentucky law would be that way if it is. Well, the Kentucky legislature, this is a legislative scheme in Kentucky and this is the law we operate under. There are a lot of laws in Kentucky I think are silly, but I try to obey them. So you're saying basically you have no logical explanation for the law, it's just something that might have been silly? Well, I do. If you're trying to put... But a minute ago you said it makes perfect sense. I think it does. Well, what's the sense? That's my question. Well, the sense is if the intent of the law is to put people back into the position that they were in before the fraudulent transaction, then the parties to the transaction have to be parties to the lawsuit. Because they can't order the bank to give the money. The bank is transferring, they've got the money. You can't order the bank to give the money back to Hunt Tractor and hence to C&H if the bank's not a party to the lawsuit. That's why it makes sense in this sense. Now I can give you hypotheticals where it would make sense perhaps, but this is not one of them. How come you didn't ask the court to join the bank as an indispensable part? Well, we were hoping they wouldn't be because then they couldn't even have a potential... But it would help this argument that you have now, wouldn't it? I don't see how it would. It never dawned on me to ask the court to ask Mr. Carter to sue the bank so that the statute requirements would be fulfilled. I wasn't anxious for him to do it right. Well, that's candid of you. Very candid. I have nothing else to talk about unless the court has other questions. I'd just get myself in more trouble if I talked. Well, thank you Mr. Sullivan. We appreciate your argument. Mr. Carter? If I may first address the issue of the Commonwealth Bank lien in the deposit account proceeds. A depository institution absolutely has a lien on funds deposited by its customers to secure any loans that the bank may have outstanding to those customers. It does not, however, give a bank an enforceable lien against the collateral proceeds. Many, many customers of banks have loans outstanding with the banks. They deposit money into its account and they have unfettered use of that money to pay it as required to parties such as C&H Capital who is due proceeds. The only time that a depository institution has a right to enforce its lien and demand use of the funds in the deposit account is if there is a default in the loans by the customer to the bank. A bank can, if there is a default or if there is some right of set off of the depository institution, then absolutely Commonwealth Bank in this instance could take the cash. However, Commonwealth Bank did not take the money. That was the defense all along. That was their initial response to C&H was that we're sorry, Commonwealth Bank came and took the money. They had a superior right in it due to their depository institution lien and therefore you have no right. That's not true. Commonwealth Bank unequivocally under the evidence here did not declare a default, did not set off any funds. Hunt Tractor through Mr. Pagano voluntarily remitted the money to Commonwealth Bank. What about his other argument that you have to sue the bank because they're the transferor? Rejecting your ring example as being, regardless of how attractive it is, just not what the Kentucky legislature has come up with. I understand. But the Kentucky Fraudulent Conveyance Act, specifically Section 378.20, voids transfers or gifts without consideration. In this instance, Commonwealth Bank gave consideration. Commonwealth Bank received $877,000. It then extinguished the liability of Hunt Tractor and Mr. Pagano and released $1.5 million in collateral. So by the time C&H had unraveled this transaction, Commonwealth Bank had given up everything that it once had. It was a conduit, a conduit only. Commonwealth Bank was the payee. I understand. Conduit. In my example, the conduit, you could have seven conduits. He's saying the Kentucky statute says you have to sue the conduit. It absolutely does not. Can you cite something that counters the citations that he... It's nice to have a good crystal example. Absolutely. The act itself states that any gift or transfer without consideration or with the intent to Now, the gift is just as important in that instance as transfer. It's hard to avoid it when one of the parties to it isn't a party, though, is the point. We cited several cases in our briefs, such as the McMurray case, where the husband gave the money to the bank and in turn released the lien on his wife's property. The plaintiff sued the wife for a fraudulent transfer. You don't have to sue the bank. And the court... You don't have to sue the bank. They are a financial intermediary. They are a conduit. Here Commonwealth Bank did not participate in this scheme. It did not benefit in this scheme. The only thing that it did was act as the conduit so that Mr. Pagano could be absolved of his liability and obtain release of his collateral. And so the bank did not do anything wrong. The statute itself simply doesn't require that all of these parties be made a party to it. Now, Kentucky does have a preferential conveyance statute, which is somewhat curious, and it provides that if essentially a preference is made to a creditor, then the transferor, the transferee, must be made parties to the action, and this is 378060, must be made parties so that the money can be returned, basically an escrow to the court or to the debtor for much like the bankruptcy code. That requires the transferor and the transferee to be parties. This is not the action in which is before the court. This is a fraudulent conveyance action, which has no such language in it whatsoever. The law in Kentucky is that, in addition to McMurray, we cited several other cases, such as Pierce v. J.B. Pierce's trustee, again, where a debtor's payment to satisfy the wife's liens on a wife, if I may finish, wife's property, is a fraudulent conveyance to the wife. There is no need to impose liability or to require a suit against the intermediary mortgagee bank. Thank you very much. Thank you, counsel, for your arguments, both Mr. Carter and Mr. Sullivan. We appreciate you appearing today. The case will be submitted. You may call the next.